Green, J.,
These two cases were tried before the same jury by agreement of the parties, and, on the trial, after all the testimony was closed, the court below directed verdicts to be entered in favor of the defendant in each case. The learned judge was of opinion that, upon the plaintiff’s testimony, a case of contributory negligence was developed, and that therefore no recovery could be had, and so instructed the jury. A careful examination of the evidence given on the trial satisfies us that there was no error in this action. The dangerous condition of the track upon which the coal cars were being moved, at and before the time of the accident, and the full knowledge of that condition by the husbands of the plaintiffs, was completely established by the plaintiff’s witnesses, who were corroborated, and not in any manner contradicted, by the witnesses for the defence. Thus, Frank Hagerman, one of the witnesses for the plaintiffs, was asked: “ Q. If- you heard Mr. Corbett give any caution or say anything to the men working with him that morning in regard to stopping sticks, what was it? A. Yes, the car before it went down, he looked around as we were going out and he said: ‘ This is a dangerous road and you want to get your blocking sticks in in time.’ Q. Corbett-said so to you? A. -Yes, sir. Q. "What did you do ? A. That cautioned me and I got mine in in time.” A similar statement as to the condition of the road was made to Carroll, and other workmen, very shortly before the accident, by Arthur Stearns, another witness of the plaintiffs. The substance of all the testimony was that the dangerous condition of the road arose from the projecting portion of the track becoming slightly lowered so that, beyond the last supporting trestle, the track was on a down grade, and that this caused a more rapid movement of the car, which, being thus impelled to strike the head block with some violence, caused the dogs which held the long rails in place to be pulled out and the car to be precipitated. It was entirely undisputed that this danger was immediately made apparent to all the men working the car, by its more rapid movement, and that it was perfectly well understood by both of the deceased workmen. The testimony of Thomas Orr, Arthur Stearns and Frank Hagerman, all of them plaintiffs’ witnesses, makes this most clear. The means of preventing accidents from this source were also fully proved by the witnesses on both sides. In the first instance, and as an immediate preventive, the men were required, whenever the track got into this condition, to put in their blocking sticks so as to arrest the movement of the car and prevent it from striking the head-block with force, and this was constantly done. The more permanent remedy, however, was to raise the track at the end by means of levers and ■blocks so as to change the down grade into an up grade. It was the constant habit and the plain duty of the men to resort to these means, whenever the danger became obvious, without waiting for *241 any instructions from the foreman, and such were their orders many times repeated. Thus Stearns testified: “ Q. The men that carry the blocks have to use their own judgment about where to put in the blocks? A. Yes, sir. Q. They wouldn’t wait for any orders? A. No, sir; there was no one to stand there and give them orders. They had to use their own judgment. Q. It depended entirely on their judgment and the care which they exercised ? A. Yes, sir.” Oole, the general foreman, testified: “ Q. What were the orders given by you with regard to the keeping up of the road, either to Carroll and Corbett, or to others when they were present and heard it ? A. I gave them orders to keep up the road when the road got out of shape or too low or any thing the matter; to put it up without further orders. They have got these orders probably fifty times and may be a hundred. And Mr. Carroll and Mr. Corbett and all the men on the cars have heard those orders many times from me and also from Shelp.” Shelp was also examined and testified to the same effect. The result of all the testimony is, and it is entirely undisputed, that the source of the danger was the depressed condition of the projecting end of the track; that this became immediately manifest to the men working the car ; that the remedies to prevent injury were very simple and were entirely in the hands of the men themselves, who, including the deceased workmen, were in the constant habit of using them, and were under orders to do so. The case, therefore, was precisely as the court below held, one in which the deceased voluntarily assumed the risks of the employment; that they must necessarily have known the presence of danger the moment it arose, and that the plain and well-known remedy to prevent injury was entirely in their own hands. In these circumstances, the mere occurrence of the injury proves the contributivenegligence of the men quite as much as it proves negligence on the part of the defendant, and, as the assumption of the risk of the employment was entirely voluntary, there can be no recovery.
Judgment affirmed. T. B.
Cf., as to res gestae, Ogden v. Pa. R. R., infra, page 249.